24-2104 Gabaldon v. New Mexico State Police. Mr. Dunn. Good morning. May it please the court, counsel. I'm Blair Dunn. I'm here on behalf of Craig Gabaldon. I'd like to start this morning by acknowledging a few things. This is probably the last pure section 1983 case that I'll have before this court that arises before the New Mexico Adoption of Civil Rights Act. So to give you some timeframes, this was January of 2021 when this incident occurred. The second thing I would ask is a plea for humanity from this court that I myself, I will candidly admit, am guilty of having made an assumption when I first learned of this case of not making. That is the assumption that I believe that the district court ultimately fell into which was Mr. Gabaldon is a member of the Banditos or was a member of the Banditos at that point in time and he must be a bad guy. Would you raise the podium a little bit? Sorry. You're tall. I try not to do that to a opposing counsel if I can help it. And so continuing with that thought, I will admit at the beginning of this case when I first learned of it I thought for sure that there was no case here that this seemed entirely reasonable and it wasn't until I went and reviewed the video and saw that there were in fact holes there that lead to what I felt were questions of fact that ultimately like Mr. Linda Johnson did a very good job of pointing out I think in the last case is an issue in this case but the difference between this case and the case you just heard is that the video is not clear and I think that is a big point that the district court crossed over. Specifically there are five facts that the district court takes as gospel that are not in the video. The first is that Mr. Gabaldon turned into traffic and you can't see that from the video. The court acknowledges you can't see from the video. That can only come and I've reviewed the video. I assume the court has reviewed the video. That can only come from Officer Smith. Second is the rate of speed. That's not present in the video. Well it looks pretty fast. Well the court, the district court says the naked evaluation, naked eye evaluation. Motorcycles accelerate. That's a, but the point is is there's a fact there. You can't clearly see that in the video. There's no recitation of hey my radar reads he's going 78. It doesn't show up in the video. The audio is on. Clearly if he'd been reading that he could have read his Viper and said hey he's going 78 miles an hour. That's not present in the video. Next he says that Officer Smith says that there are sparks that flew from the tailpipe as he made the right hand turned on Adams. Excuse me I got out of order. First there's he says there's no signal which you can't see in the video. You can't see a blinking light. But motorcycle riders commonly especially gang members don't use those signals. It's it's a source of pride but that's another question fact. It doesn't show up. You can't tell whether or not he raised his hand to give a hand signal or not. Whether he did or he didn't is something we don't know from the video. Fourth the Officer Smith says that sparks flew from the tailpipe of the motorcycles as he turned the corner. That doesn't show up in the video and you absolutely would expect to see that in the video and that creates what will turn to as a credibility problem for Officer Smith in a minute. Finally he says that Mr. Gabaldon appeared to wobble and have difficulty pulling his bike into the driveway. The video does not show that. In fact I would say it looks like more like he adroitly did that not as somebody who was impaired. Those five facts are not present in the video the way that Officer Smith says they were but they were taken as gospel by the We did. We did. I didn't see much in the briefs on that. The issue is the district court's decision doesn't openly rely on it. It appears she reserves that and says that there will be lesser sanctions. She says that there was a spoliation that occurred. We don't dispute that. There's some dispute of maybe when they should have asked and how relevant it actually is given that they had pictures of it but I think it's part of this permeation that leads to an adverse inference even though she said she was going to decide that later that the adverse inference actually showed up in her decision to grant summary judgment. But that's the implication. If we just discard your client's affidavit then don't you have a problem with undisputed material fact? We do and that's at the heart of this case. I agree that that is absolutely how the district court arrived at where it did was that by excluding that affidavit there is no longer a dispute to Officer Smith's recitation of the facts. I 100% agree with that. The issue is the district court in deciding to exclude that evidence I think went too far with the affidavit. I think in light of what we had said and in light of the recollection specifically. Well then if you are challenging the court's order on spoliation, you should have argued that she abused her discretion by disregarding the affidavit in the in the summary judgment order. I think we did. It's not a spoliation, it's a sham affidavit determination. Right, there's two of them there. Right, because the district court never got around to imposing any sanction for spoliation. Right, and that's why I just brought that up in terms of adding to the overall inference that we believe that the district court fell prey to. So you're challenging the district court's determination that it was a sham affidavit and excluded it on that basis? Yes, Your Honor. That's at the heart of what we're saying and there's a couple things that go into that. Specifically, we'd address first Officer Smith's credibility issues. It appears he has included facts that are that are clearly not visible on the video. But just because they're not on the video doesn't mean he didn't see them. I mean you claim there's you can't see him make it on the video you can't see him use a turn signal. True. And you're claiming he did use the turn signal even though the video doesn't show it but you're saying the officer cannot say there were sparks because it doesn't show on the video. So it seems like you're taking pretty inconsistent positions about how we view the video. Well, I would say that that's the reason that there's a dispute of fact. Is that ultimately you have that you have inconclusive video evidence and you have Officer Smith's recitation of what happened and you have Mr. Gabaldon's recitation. But the problem that you have is that when his deposition was taken his testimony was very different and he didn't he didn't remember whether he used a turn signal or not. He couldn't dispute in his deposition any of the critical facts that the officer testified to and then I think it's the night before the summary judgment day before the summary judgment is filed he files this affidavit contradicting his deposition testimony. Isn't that kind of a classic situation of a sham affidavit? It might be the the classic situation for a sham affidavit but it is also the classic situation of how I turn in when I when I obtain affidavits in response to motions for summary judgment from my clients. That's in the preparation in that period of time where we're preparing those I have the client come in and the last thing I do is review that evidence with them and have them give me an affidavit regarding those material facts. The important point that I think the district court did this was a page 10 to 12 or 10 to 11 of our brief the district court discusses that when I showed him the refreshed his memory with the videos that his memory his memory changed and the court specifically notes that she would have expected that his recitation or refreshing of his memory rather would have reflected what's on the video but the point of refreshing his memory was is the things that aren't on the video what does he remember about them. But in his deposition he stated that he had already reviewed the videos on pages 108 and 109 of his deposition. Not at any time table consistent or close to that though and is and is as we pointed out in a footnote he says I don't know I don't really remember a lot and he throughout his deposition that he's had memory issues associated to this event I agree that there's a credibility issue for him and for officer Smith both and that ultimately his recitation may not be the one that is believed by the finder of fact but that still gets us to the point where somebody is determining facts that are outside of the clearly extrinsic evidence of the video and that was the district court and that's where we're why we're here today is I think the district court got ahead of the facts and made a determination based upon something other than what is in the video and and could only have achieved that decision by excluding the affidavit as a sham and the parts of the affidavit that are that the district court feels are a sham largely centered around his ability to remember things associated to being dumped on his head by these officers and we don't even get to the argument about whether or not that was excessive force and outside of the state police policy to use the illegal takedown maneuver that they did. Isn't part of the problem with the affidavit that it sort of reverses the order that discovery is supposed to go into I mean wouldn't it wouldn't it just completely undermine the whole process if your client can go in and give his deposition and answer I don't know to everything and then come back when summary judgments filed and say you know what I've I've reviewed some evidence and all those things that I didn't remember I now remember because I refreshed my recollection and the officer did do this and the officer did do that and I did turn on my signal and I didn't speed I mean it it just seems it seems like it would be problematic for us to to sort of agree that that's an okay way to proceed. Agreed your honor I don't disagree with that that would be the classic as Judge McHugh pointed out typical sham affidavit type situation but my client didn't have selective amnesia where he showed up and said I don't remember to everything his deposition is also clear and I think it should be read in its entirety not just taking out of out of one piece or here or there where there's been an opportunity to refresh we could have watched the video during the deposition it's not wasn't my deposition we didn't do that that we would have put in it put an end to this question right then and there because then is he would have had the benefit of that but taking as a whole when you read his whole deposition he's very clear that he's an individual that's got memory issues associated to having real problems because of what happened to him so it's it's it's unfortunately it creates a situation this is the plea for humanity state police dumped him on his head broke his clavicle dumped him on his head hard enough he has trouble remembering that incident and things since then he didn't have a problem with his memory that was documented before that now he does so the lesson to the police could be in this situation well if you mess up make sure you dump them hard enough on their head they can't remember anything that happens after that and I'm not so sure that I'm his VA records though they're limited as most VA records commonly unfortunately are is there the medical records from the jail or not can or and from the from the time at the state police substation great the thing that would confirm the memory loss issue that you're discussing or where would I find confirmation in the record well if you look at his depth of deposition you're not gonna find medical records per se but he discusses showering at the jail and having blood come off scabs and blood come off in his hand from the top of his head while he's showering didn't even know that he had a head injury or a head wound it's not documented in this in his and the records from the state police when he's at the substation awaiting to be sent out to the detention facility but it's there and he's got he's got real issues with something something happened to his head and there's blood and he remembers at least seeing that afterwards he doesn't remember ever having the memory issues the short-term memory issues and that's also in his deposition he discusses his memory issues that have arisen since this event that he didn't have before so there is testimony in his deposition that supports that he has memory problems can I ask you a question about the spoliation I just want to sort of nail this one down before your times up did is is there anywhere in the district court's order where it is apparent that she used an adverse and inference against your client no I mean I just want I just want to drill down on so that so there's basically we really don't have anything that we can review that would show us that there was an adverse inference no it's my adverse inference towards judge Rivera okay that's what what we have is is my adverse inference that I believe she felt trapped to the same thing that I have I felt trapped to which is that hey this guy's a member of the banditos and clearly the officer's got to be right he's got me wrong yeah but that's that's where we are I'll reserve the rest of my time I think counsel good morning your honors may it please the courts my name is Jessica Nixon from the law firm of Robles Rayel and Anaya and I am here on behalf of New Mexico State Police Officer Kevin Smith and Lieutenant Curtis Ward which I will collectively refer to as the state defendants today before my I start my argument I'd like to briefly apologize for my voice I lost my voice on my way here to the allergies so if for any reason like a little closer to your mouth and we're sorry thank you your honor if for any reason you can't hear me today please just let me know and I'll do my best to speak back by way of brief factual background this matter arises from the traffic stop and subsequent arrest of a pellet Craig Gabaldon just after midnight on January 29th 2021 officer Smith was in his marked patrol unit and observed mr. Gabaldon commit multiple traffic violations while operating a motor vehicle namely his Harley-Davidson motorcycle after observing the traffic violations officer Smith attempted to initiate a traffic stop by engaging his emergency equipment before mr. Gabaldon pulled into his driveway on Adams Street rather than stopping mr. Gabaldon proceeded to pull from my motorcycle into the driveway dismount and head towards the residence at officer Smith's verbal command mr. Gabaldon turned to engage with officer Smith and began removing various articles of his gear and placing them in the truck parked next to the motorcycle mr. Gabaldon's compliance stopped there during the next minutes of the interaction mr. Gabaldon verbally resisted officer Smith's lawful commands and questions regarding his identity and participation in field sobriety tests there is no room to doubt that mr. Gabaldon heard and understood the verbal instructions from officers officer Smith as he often repeated the same back to officer Smith during the interaction officer Smith observed mr. Gabaldon to have bloodshot watery eyes slurs slurred speech and an odor of alcohol accordingly during the interaction officer Smith had developed probable cause to arrest mr. Gabaldon for driving while under the influence in violation of section 66-8-102 D of the New Mexico statutes annotated can I interrupt to ask a question when the officer decided he was going 78 miles per hour in a 35 zone was that did he clock him or was it visual he used his radar yes so as your honor noted that's one of the at least three traffic violations that officer Smith observed before initiating the stop and he was traveling more than twice the posted speed limits at this point it's important to note that mr. Gabaldon himself testified during his deposition that he did not recall how fast he was going nor did he recall the posted speed limits and when we think about the sham affidavit then conveniently the day before his response to the motions for summary judgment or do for calls that he wasn't exceeding the speed limit however applying with all traffic laws correct and he specifically states he did not exceed the speed limit however his affidavit doesn't clarify or refresh or mention the posted speed limit nor does he provide any evidence that he was in fact traveling at a rate of speed at 35 miles per hour rather he executes the self-serving affidavit for the purpose of responding to summary judgment which contradicts his earlier testimony which was delivered under oath with counsel present while he had the opportunity to be cross-examined did he have a blood alcohol level taken it's unknown if he did because once he arrived at the New Mexico State Police substation he completely stopped responding to officer Smith who asked him at least twice if he would consent to the breathalyzer well I apologize officer Smith repeatedly asked him on two different occasions he attempted to perform the breathalyzer and told Mr. Gabaldon that if he continued to not respond he would take that as a refusal by Mr. Gabaldon to participate in the blood or the breathalyzer test and it's important to note when we talk about the injuries that Mr. Gabaldon may or may have sustained in this case the video from officer Smith's lapel camera at the substation when he's attempting to perform the breathalyzer test does not show any visible injuries there's no sign of blood Mr. Gabaldon isn't holding any part of his body indicating that he's in pain there's just no evidence that that happened at the time and regardless of whether or not there was an injury that doesn't change the court's analysis on the summary judgment motions which are before your honors here today. Does the video contradict the statement by officer Smith about the sparks from the exhaust of a motorcycle? The video does not show whether or not that happened or when as Mr. Gabaldon was making the right-hand turn from Carlisle onto Candelaria eastbound. Regardless of what that video shows that fact is not material to the determination of whether there was reasonable suspicion or probable cause in this case. Is it material to the officers credibility? I don't believe it it changes the fact that as a matter of law there was reasonable suspicion for the traffic stop probable cause for the arrest and that the force used was reasonable and so therefore the court could determine based on the material facts that there was no genuine dispute and therefore summary judgment was proper. Mr. Gabaldon also appeals as alluded to in the previous argument that he was appealing the court's order on spoliation sanctions. There's no dispute that Mr. Gabaldon caused the spoliation of relevant evidence in this case. In fact he caused the spoliation of the relevant evidence while the parties were in litigation with a pending motion before the court for that evidence. There's no dispute that he intentionally returned the motorcycle gear which he is the crux of his claims in this case to the Bandidos Motorcycle Club where they were burned in the month of July 2023. Wouldn't that only matter if he was able to make a connection between the spoliation and the district court's order on summary judgment? I absolutely agree with you Judge Carson. He can't make the connection between the spoliation and any of the district court's subsequent orders because the district court simply never fashioned a sanction for the spoliation of evidence. I simply want to emphasize that there is no dispute that Mr. Gabaldon caused the spoliation of that relevant evidence and it's not brought up or disputed by Mr. Gabaldon in the briefing nor before your honors today. Let me let me ask you a question about about one of the traffic violations or purported traffic violations. I thought I heard Mr. Dunn say that the officer testified that he turned into oncoming traffic when he turned off onto Candelaria and it's sort of it's a precise question. I mean did he testify to that or did he testify that he turned into the oncoming traffic lane? I mean because it's pretty clear there's nobody out there that late. That's correct your honor and in fact officer Smith did not testify in this case. His deposition was never actually requested. Mr. Dunn, my opposing counsel's statements are based on I believe a pretrial interview conducted during the underlying criminal proceedings. However, that transcript confirms that and as consistent with officer Smith's report that Mr. Gabaldon turned into the eastbound lanes or the westbound lanes of Candelaria as he was turning eastbound. That is also consistent with officer Smith's statements to Mr. Gabaldon in the driveway on Adams Street. He tells Mr. Gabaldon you turned into the eastbound things. You turned into the wrong lanes of traffic as you were making that turn from Candelaria onto Carlisle. Oh I'm sorry I have that backwards from Carlisle onto Candelaria. Okay thank you. The second issue that Mr. Gabaldon raises has to do with the sham affidavit and the opening brief submitted to this court by Mr. Gabaldon implies that he takes issue with the district court's finding because the district court did not analyze the Franks v. Nimmo factors. However, the district court's opinion makes clear that the district court not only analyzed those factors but analyzed all three factors in great detail. The three factors that are set forth by the by this court in Franks v. Nimmo are whether the affiant, in this case Mr. Gabaldon, was cross-examined during his earlier testimony. Second, whether Mr. Gabaldon had access to the pertinent evidence at the time of the earlier testimony or if the affidavit is based on newly discovered evidence. And third, whether the earlier testimony reflects confusion which the affidavit attempts to explain. Turning to the first factor, there is no dispute in this case that Mr. Gabaldon, his earlier testimony during his deposition was under oath. He had the opportunity to be cross-examined and was represented by counsel. There is simply, and the district court walked through this analysis, there's simply no reason to presume or conclude that the first Franks factor counsels in any way other than exclusion of the sham affidavit. The second factor was a much more detailed analysis by the district courts. In fact, the district court analyzed five different instances of inconsistencies in Mr. Gabaldon's affidavit and analyzed why the video evidence could not have refreshed his recollection. The issue is not what the video may or may not have proved, it's whether it would have refreshed his recollection sufficient to create this affidavit that contradicts his, Mr. Gabaldon's earlier deposition testimony in material ways. What I think the argument is that by watching the video, it triggered his memory more broadly of the event. How do you respond to that? I don't believe that that conclusion is actually supported by the record. As the district court points out in its order discussing the affidavit, Mr. Gabaldon testified during his deposition that his memory issues and his memory loss was getting worse, not better. And as this court has discussed, there is simply nothing in the videos which would have helped clarify some of those issues and inconsistencies from his deposition. For example, in his affidavit, Mr. Gabaldon purports that he had not drank alcohol for four months prior to the incident and hadn't drank since. However, in his deposition, he testified that he had consumed alcohol just one month prior to that deposition. There is nothing about the video evidence that would have helped clarify that fact. The same is true when you consider Mr. Gabaldon's belief for the reason that Officer Smith pulled him over. During his deposition, he was asked if he believed Officer Smith initiated and the traffic stop and arrested him because he was wearing the motorcycle gear. And Mr. Gabaldon testifies he did not know. Yet in his affidavit, he clearly states that that is the reason for his belief. There is nothing in the video evidence which would change Mr. Gabaldon's knowledge about his own belief for the reason he was pulled over. And why isn't all that, I mean, why isn't all that cross-examination at trial? Why not, why isn't the best course to have a trial on this and then you can have Mr. Gabaldon up on the stand and use all this stuff against him to make him look like he's not telling the truth? Your Honor, I think that that would be the plan when we address the state law claims that were rebounded back to state court. However, allowing that to happen at this stage with regard to the federal claims which were dismissed on summary judgment is an important mechanism to preserve the judicial resources and economy of the court and promote the purpose of summary judgment as well as qualified immunity that is granted to law enforcement officers under Section 1983. And so in this case, if this case proceeds to trial, the New Mexico State Police, Officer Smith, and Curtis Ward will have to endure that trial. And the time and expense that that takes for all the parties involved, including the court, is not supported by a dispute of material fact in this case. And that is the point of summary judgment. And as Your Honor, Judge Carson pointed out, if parties were able to undermine the entire litigation process by simply presenting an affidavit at the summary judgment stage, it defeats the purpose and it allows parties to proceed when there is no actual genuine dispute of material facts. And briefly, I just want to touch on Mr. Gabaldon's last argument for appeal here today. And that has to do with the stop that was initiated by Officer Smith. There is no doubt that there was reasonable suspicion to support this stop. As the record demonstrates, there were three instances of observed traffic violations which were undisputed. So for these reasons and those discussed in the last affirmance of all of the district court's orders. Thank you. Thank you, counsel. We could follow along. Thanks for persevering. Mr. Dunn, you had some rebuttal. The issue is, are there disputed material facts? I think there's an important point in the video that makes, so there's the three traffic violations that occur prior to the initiation of the, or the initiation of the stop. Most of the belief that Officer Smith says he had is that he observed the sparks flying off, which was indication that Mr. Gabaldon was driving under the influence. That's one. The other is the speeding and the crossing lines. Well, he's got a, he's got radar on the speeding. That's enough right there to pull him over, right? Assuming he's telling the truth about what his radar showed and whether he actually had any radar running on him. What you have is, you have somebody saying he sped to 78 miles an hour. He still manages to catch him. And you can hear the vehicle wind up, the suburban wind up that he's driving really fast. Motorcycles accelerate much quicker and slow down much quicker. He's still able to catch him by the time, at least on camera, by the time he gets to Adams Street. So he, and he didn't engage, this is my point, he didn't engage his lights or sirens when he decided to break the speed limit to run down that street. The officer didn't. So the officer, which, if you're going to engage in a pursuit, you're supposed to engage your lights and sirens. He didn't. Why didn't he do that? That's a big question as to his credibility. Instead, he just speeds down to 35 miles an hour. But that's, that's extra record, right? It is. It is. But it's stuff that can be inferred from the video itself. That those inferences could have been made in favor of my client instead of made in favor of the state police officer. And that's, it's in some where we end up. The reality is, is that there are enough disputed material facts here that we should have had the opportunity to test the credibility of Officer Smith and Mr. Gabaldon in front of a jury. That's what should have happened here. And while I can understand why the district courts engage in summary judgment, there are those cases where we really do have to put it to a jury and this was one of those. Thank you. Thank you, counsel. Counselor, excused and the case is submitted. Appreciate your arguments this morning.